[Civ. No. 3508. Third Appellate District.—May 8, 1928.]

MARY DVORAK, Respondent, v. M. R. LATIMER et al., Appellants.

Loyd Wright, Charles E. Millikan and Fred Reed for Appellants.

Sebald L. Cheroske, Feemster & Cleary and W. J. Tremecar for Respondent.

TUTTLE, J., *pro tem.*—This is an action brought to obtain a rescission of a contract for the sale of real property and for alternative relief in damages, in the event a return of plaintiff's property cannot be had.

From the facts it appears that for more than two years prior to February 20, 1923, defendants (husband and wife) were the owners of certain ranch property situated in the county of Tulare. The said ranch was improved by a dwelling-house, barn, pumping plant, and some orange and peach trees. For some time prior to said date, plaintiff was the owner of a lot in the city of Pasadena, on which was erected a "double" or "duplex" bungalow.

On February 17th plaintiff called at said ranch in company with her husband, one Ryman, and F. L. Polansky, a real estate salesman who was interested in promoting a trade of said properties. Prior to said visit plaintiff had not communicated with or seen defendants, nor had defendants inspected said bungalow. Plaintiff is of Czech descent and spoke very little English. Most of the conversation had on said visit was through the said real estate agent, who acted as interpreter, and who apparently was acting as agent for both parties with their knowledge and consent. Certain conversations were had with reference particularly to the acreage and water supply. Thereafter defendants inspected said bungalow, and on February 20, 1923, a contract was entered into and executed by the parties to said action, providing for the exchange of their respective properties. At that time the said ranch was free of encumbrances and

the bungalow was subject to an encumbrance of $2,000. The said agreement provided that the ranch should be accepted, subject to a lien of $1,275, and that the bungalow should be accepted, subject to the existing lien of $2,000. By a separate agreement between the parties, which does not appear to be in writing, it was agreed that, prior to the exchange of said properties, defendants would mortgage their ranch for the sum of $1,300, and of this sum defendants have retained $1,000 and the balance of $300 was paid to plaintiff. After the foregoing details of the transaction had been consummated, deeds to the respective properties were delivered, and on March 7, 1923, plaintiff went into possession of said ranch, and remained there for some seven months. On or about May 24, 1924, an action was started to foreclose the said mortgage upon the ranch, and a sale was had under those proceedings on September 23, 1924, and the purchaser being one W. R. Carson and the price being $1,584.42.

On July 7, 1923, plaintiff commenced an action against defendants which was entitled ''Complaint to set aside deed and for re-conveyance.'' Said action was dismissed on January 3, 1924, and on January 10, 1924, this action was commenced.

On or about December 4, 1923, and prior to the filing of the complaint herein, plaintiff served upon defendants a notice of rescission, and at the same time tendered to defendants a deed to said ranch, duly executed, and the sum of $42.03, the amount of expenses incurred by defendants in the transaction. This notice offered to restore to defendants all things of value received by plaintiff under the said contract.

The complaint sets forth the facts substantially as we have summarized them, and in addition alleges that defendants falsely and fraudulently represented to plaintiff that there was on said ranch water in sufficient quantities for domestic purposes and for the purposes of irrigating the growing trees, and whatever crops may be grown upon said ranch; that defendants pointed out to plaintiffs a certain tract of land which did actually contain twelve acres of land, more or less, and represented to plaintiff that the tract so shown to plaintiff was the land which they agreed in said agreement of exchange to exchange for the herein described premises then belonging to plaintiff; that the water on said land was

and still is entirely insufficient for domestic purposes or for irrigating the trees on said ranch or for irrigating such crops as might be grown on said ranch; that the tract of land deeded to plaintiff was only a portion of the land defendant agreed to convey to her, and did not contain 12 acres, more or less; that in truth and in fact the representations so made were each and all of them fraudulent and false, as defendants well knew. Allegations in respect to the value of each of said properties then follow, and the service of the notice of rescission is stated. Plaintiff prayed that the agreement of exchange be rescinded; that the conveyance from plaintiff to defendants be canceled; that defendants be adjudged to reconvey the premises conveyed by the plaintiff to defendants, to plaintiff, and in the event that rescission be impracticable, that plaintiff have judgment against defendants in the sum of $7,000. There is also a prayer for general relief.

The answer denies all of said allegations, but admits that plaintiff notified defendants that she elected to rescind said agreement by reason of the fraud and deceit of defendants.

The court found the facts to be substantially as alleged in the complaint, and judgment was entered decreeing a rescission of the said contract; directing defendant to reconvey the San Pedro property to plaintiff, subject to a mortgage of $2,000, and upon this being done, directing plaintiff to reconvey to defendants the said ranch, subject to the encumbrance which was upon the same at the time of said exchange, and to the foreclosure proceedings and sale as found by the court, and also directing plaintiffs to pay to defendants the sum of $350.52. In the event that it shall be impossible for defendants to reconvey to plaintiff, the judgment provided that the latter shall retain said ranch and have judgment against defendants in the sum of $4,149.48.

This appeal is taken from the judgment, by means of a bill of exceptions, and appellant makes the following points as a ground for reversal:

1. The insufficiency of the evidence to support certain findings.

2. That the judgment is uncertain in that there is no method of resolving the alternative to be followed, or the party by whom an election is to be made.

3. That the judgment is uncertain in respect to certain ditch water to be transferred thereunder.

4. That the judgment is uncertain as to the encumbrance to be placed on the property to be reconveyed by defendants.

As to the first ground above stated, defendants contend that the evidence is insufficient to support the finding relative to fraudulent representations made in respect to the amount of land to be conveyed. The court found that defendants did not convey the whole ranch to plaintiff, as agreed, but only a portion thereof.

The agreement for the exchange of the said properties described the property of defendants as "that certain ranch locate on Worth road, 2 miles southwest from Porterville, California, known as the W. R. Latimer Ranch, containing twelve acres, more or less." It is admitted that the property actually conveyed to plaintiff contained 10.677 acres. Defendant W. H. Latimer testified that in the northwest corner of the said ranch there was a tract containing about two-thirds of an acre, which was separated from the remainder of the place by a fence; that said tract was planted with some fig trees. and there was situated thereon two eight foot square board houses used for sulphuring when drying peaches taken from the orchard on the ranch; that he had told plaintiff that this tract had been conveyed to his son, and it did not belong to the ranch. This tract was omitted from the conveyance to plaintiff. Walter Latimer, son of defendant above mentioned, testified that he was present at the office of the real estate agent when the exchange was discussed and while negotiations leading to its consummation were in progress; that he told the said agent that "we (his father and himself) would trade the clear ranch for the San Pedro property." At no time prior to the trial of said action, did the said son make any claim to said tract of two-thirds of an acre. No proof of a conveyance from father to son, covering this tract, was made. In addition to this two-thirds of an acre which was omitted from the deed to plaintiff, there was also left out of said deed another tract known as "that portion east of the canal." It is admitted by appellant that the disparity between the amount of land actually conveyed and twelve acres is 1.323 acres.

The testimony of plaintiff on this point brings out very clearly the difficulty confronting an appellate court in an

attempt to pass upon a question of this character where the sufficiency of the evidence is relied upon for a reversal. This witness testified through an interpreter. When it came to the question of just what land was shown her by defendants upon her inspection of the ranch the court adopted the most obvious method of bringing out her testimony, instructing her to go to the map on the blackboard and point out just what was shown her and where she went. She did this, and while counsel attempted to fix her migrations by stating the different objects which she appeared to designate, it is impossible for us to say what her testimony was. Only those present in court could tell. Other witnesses who were present and went over to the ranch at the same time as plaintiff were her husband, Charles Dvorak, and one Joe Kolar. Neither of these heard defendant make any claim that the omitted acreage was not part of the ranch proper. It is admitted that the sulphur houses on said omitted tract were used to dry peaches raised on the other portion of the ranch deeded to plaintiff. These houses were quite clearly an adjunct of the ranch proper and were used in connection with operating the same.

Appellants, however, insist that a conveyance of the acreage mentioned was a substantial compliance with the contract, and that the disparity of some 1.32 acres is excusable because of the use of the phrase "12 acres, more or less" in the description found in the contract. As a general rule, the phrase "more or less," when immediately following a given number of acres, is one of safety and precaution and intended to cover some slight or unimportant inaccuracy (41 C. J. 214–12), but the term may also be treated and construed as a mere estimate of an unknown and indefinite quantity or number which the parties have agreed shall be the subject matter of the contract. (*Mosby* v. *Smith,* 194 Mo. App. 20, 28 [186 S. W. 49].) In the instant case the contract described the property by metes and bounds, but it was also designated as the "W. H. Latimer Ranch," and the use of the phrase "more or less" was merely an attempt to approximate the acreage in the ranch, which was the subject matter of the contract. Furthermore, the phrase mentioned does not meet the situation where the portion omitted contained valuable improvements, and without which the ranch might be worthless. Plaintiff also testified that de-

fendants showed her the ranch, and if, as the court found, it was falsely represented to her that said omitted portion was a part thereof, the question as to the exact amount of acres discussed in the preliminary negotiations becomes more or less immaterial. It is admitted by appellants that they themselves did not know the exact acreage in their ranch, as it had never been surveyed.

█ The evidence is claimed to be insufficient to support the finding with reference to fraudulent representations made on the question of water on the ranch for domestic and irrigation purposes. On this question plaintiff testified that defendant W. H. Latimer told her, in response to her inquiry as to whether or not there was an ample supply of water, that "there was plenty of water"; "that he said there was plenty of water"; "all that water is in the ditch the year around, and we can irrigate with the pump and sell the ditch water; that there is plenty of water the year around"; that she would not have made the trade if defendant had not stated to her that there was plenty of water; that in March, after she had moved on the property, there was not water enough for the house or for irrigation. On the same question witness Dvorak testified that prior to the execution of the exchange contract, he visited the ranch with plaintiff, his wife; that Mr. Latimer, defendant, told him that he could use the pump all the time; that the water never went down, and that they would have enough ditch water to sell to their neighbors; that plaintiff lived on the place six or seven months and after April there was not enough water for the house; they never got water at all after May.

Appellant takes the position that all the foregoing statements with reference to the water supply are mere expressions of opinion, quoting the following language from *Wolleson* v. *Coburn,* 63 Cal. App. 315 [218 Pac. 479] : "Mere expressions of opinion are not generally considered as representations of fact. Consequently they are insufficient for the purpose of maintaining an action for fraud or deceit, or for the purpose of resinding a contract." While that is the general rule followed in this state, it is subject to the qualification that "matters which might otherwise be only expressions of opinion, when stated as accomplished facts by one of the parties to a contract, and accepted and relied upon by the other as such, may, and often do, become the basis

of actions for fraudulent misrepresentations.'' (*Sheer* v. *Hoyt*, 13 Cal. App. 662 [110 Pac. 477].) In the case of *Owen* v. *Pomona Land & Water Co.*, 131 Cal. 530 [63 Pac. 850, 64 Pac. 253], relied upon by appellant, no representations were made as to the permanency of the water supply, and the improvements made by purchaser were made upon the strength of his own belief, and not in reliance upon a representation made by the owner. That representations of the character involved in this action may constitute the basis for fraud, and that they are not, as appellant states, expressions of opinion or predictions, has been held to be the rule by the supreme court in the case of *Hill* v. *Wilson*, 88 Cal. 92 [25 Pac. 1105]. In that case plaintiff sought to rescind a contract for the purchase of land on account of fraudulent representations as to the water supply, and the representations consisted in the statements made to plaintiff by defendant that the land was well and abundantly watered by means of a ditch; that said ditch would carry and there would be flowing therein during all of the dry and irrigating season from two to three hundred inches of water, which was and would be ample and sufficient to irrigate the whole of the land so that the same would produce large and valuable crops of alfalfa and other grasses. The contention that these statements were mere expressions of opinion was answered by the court in the following language:

''They were statements of very material and important facts and such as were well calculated to induce the purchase. It was not a statement that there would be water from a certain stream or ditch, but that the ranch was well supplied with water. This was a statement of an existing supply of water. Nor could it be construed as a mere statement that at the time the representation was made it was supplied with sufficient water. To say that the ranch was well watered was equivalent to a statement that it had a supply of water sufficient to irrigate and produce crops at all proper seasons of the year. And this was expressly stated.''

The case of *Tracey* v. *Smith*, 175 Cal. 161 [165 Pac. 535], is also authority for the rule that what is a matter of opinion in cases of this character depends largely upon the circumstances of the particular case under consideration, and whether or not the representations were made in the character of a statement of fact.

It might be noted in passing that the fraudulent character of the said representations made in respect to the water supply was established by the testimony of a former employee of defendants, witness Kaehler, who testified that while he was working on the place for several years prior to the time plaintiff went into possession they couldn't get enough water from the pumping plant to run up to the house; that they couldn't get the tank half full; that the peach crop dried up the year previous from lack of water.

Upon the question of the character of the representations made upon the water supply, we must hold that they were positive representations made by one assuming to have knowledge of the subject, and that they were not mere expressions of opinion or predictions, but were stated as accomplished facts.

■ Appellants question the finding of the trial court on the matter of damages and the insufficiency of the evidence in respect thereto. This chief complaint seems to be that there was no evidence of the value of the land if the water supply had been as represented, and the value of the land with water conditions as plaintiff actually found them. It is well established that in a case of this character the measure of plaintiff's damages is the difference between the actual value of the property proffered and passed in exchange by defendants and its value had it been as represented by defendants. (*Hunter* v. *McKenzie*, 197 Cal. 176 [239 Pac. 1090].) Witness Smith testified that the ranch was worth the sum of $2,500 at the time the contract was made. Defendant testified that his ranch was worth $9,000. The estimate given by defendant was unquestionably the value of the property as he represented it to be. Various other estimates were given of the value of the ranch, and there was ample evidence before the court to justify its finding of damages in the sum of $4,500.

Complaint is made of the manner in which the court computed the credit to be allowed defendants in respect to the said damages. The court allowed defendants credit for the sum of $350.52 paid by them in connection with the exchange of the properties, and also allowed them the sum of $70 per month as the rental value of the San Pedro house, and said rental was held to compensate defendants for money paid out by them for payment of taxes and improvements made

upon said house. No exception was made to this computation at the trial. There was evidence that defendants occupied said house, and the value of the house and lot was testified to as being $11,000. While there appears no direct evidence as to the rental value of this property, this was a matter which the court could properly determine with such evidence before it. No complaint is made by defendants upon the ground that the estimate of rental is excessive, and, ,therefore, they cannot be prejudiced by this finding. We see no reason why this finding should be disturbed.

■ Appellant next attacks the insufficiency of the finding to the effect that plaintiff offered to restore to defendants everything she received under the contract. This finding is made in the exact language of the amended complaint, and this allegation of the complaint is not denied by defendants in their answer. A failure to deny a material averment in a complaint is an admission of the truth of the fact stated, and obviates the need of introducing evidence and making a finding upon the fact involved. (21 Cal. Jur., p. 156.) Notwithstanding this condition of affairs, evidence was introduced by both parties concerning the matter of rescission. Plaintiff offered, in a written notice duly served upon defendants, to "fully restore to you any and all things of value received by me from you as fully and completely as if said contract of exchange had never been made." At the time of said service tender was made of the sum of $42.03 and a deed to said ranch property. Defendants refused to read the said notice. We believe the said notice and tender were sufficient to comply with section 1691 of the Civil Code. ■ Appellants complain because they paid off a $2,000 encumbrance on the San Pedro property and respondent did not tender this sum to them. We do not see that respondent was concerned with this payment which appellants had voluntarily made, following the fraudulent transaction. The judgment expressly provided that this property should be reconveyed to plaintiff, *subject to an encumbrance of $2,000,* and defendants' rights were fully protected in this respect. ■ As to the sum of 300, which the evidence shows was paid plaintiff out of the proceeds of the loan which defendants placed upon their ranch, prior to the execution of the contract, and which was paid to the real estate agent as his commission, this was a matter which

was not mentioned or referred to in the contract. It was an entirely separate transaction, and no offer to repay the same, as a basis for rescission, was required. Section 1691 of the Civil Code obligates the party seeking rescission to "restore to the other party everything of value which he has received under the contract; or must offer to restore the same." The $300 was not received *under the contract* sought to be rescinded. It was admittedly a separate agreement which was not before the court. The only thing of value which plaintiff received under the contract in question was the real property, for which the evidence shows a deed was tendered. Where the vendee and vendor, under a contract for the sale or exchange of real property, enter into another independent agreement and advances have been made to the vendee under said agreement, the vendee, upon rescinding the contract for purchase, is not obliged to offer restoration of a sum due under said independent agreement as a condition precedent to the right to maintain an action to enforce rescission. The question of any sum not due under the contract calls for an adjudication of facts independent of the contract itself, and this does not come within the scope of section 1691 of the Civil Code. (*California Farm & Fruit Co.* v. *Schiappa-Pietra*, 151 Cal. 732 [239 Pac. 1090].) Credit was given appellant in the judgment for said sum of $300 and for taxes and other expenditures made by appellant with respect to the San Pedro property, and we see no reason why the adjustment of the equities between the parties, made by the learned trial judge, should be disturbed. As has been well stated in a case involving rescission based upon fraud, "parties engaged in a fraudulent attempt to obtain a neighbor's property are not the objects of the special solicitude of the courts." (*Green* v. *Duvergey*, 146 Cal. 379 [80 Pac. 234].)

The court directed plaintiff to reconvey the said ranch, subject to the encumbrance thereon at the time of the exchange, and to the foreclosure proceedings and sale referred to in the statement of facts, *supra.* We see no reason why appellant can complain of the judgment in this particular. Notice of rescission was served prior to the commencement of proceedings to foreclose said mortgage. The adjustment of this and the other equities between the parties was wholly consonant with the principles of equity, and in

pursuance of the right of the court to adjust such equities according to the respective rights of the parties. All of these matters were fully covered by the trial court in its findings, and we do not feel disposed to disturb the conclusions reached in respect thereto.

■ Appellants are not satisfied with the alternative judgment rendered herein, stating that it is uncertain, in several particulars. Their objections to a judgment in the alternative in cases of this character are all met by the decision of this court in the case of *Marks* v. *Hopkins*, 55 Cal. App. 664 [203 Pac. 1035], wherein it was held that, in an action for rescission, based upon fraud, it may be adjudged that plaintiff is entitled to a reconveyance of the property or to the payment to him by the other party of the value of the property found by the court. The situation which confronts defendants was brought about by their own fraud, and if they refuse to reconvey the San Pedro property they cannot complain if a money judgment is enforced against them, as an alternative to said reconveyance.

We have examined the other grounds of uncertainty which appellants rely upon, but believe there is no merit in them. The judgment is specific and complete in its details, and it was one which we hold was in form and effect in keeping with the broad and extensive powers which a court of equity possesses and which was necessary to adjust the equities of the case according to the just rights of the parties.

■ The ability of plaintiff to restore is questioned by appellant. We see no merit in this objection. If appellants offer to convey the San Diego property to respondent, according to the judgment, and she is, through her own fault, or neglect, unable to convey the ranch to appellants, the matter would be at an end, and no resort to the alternative money judgment could be had by respondent. Thus the finding upon the ability of respondent to restore the property received by her cannot operate in any manner to the prejudice of appellant and affords him no ground for complaint. There is, however, some substantial evidence showing the ability of plaintiff to perform.

Summing up our conclusions in respect to the foregoing points urged by appellant, we find substantial evidence in the record to uphold the conclusions of the trial court as set forth in the findings. Respondent was a foreigner unac-

quainted with the English language. She undoubtedly purchased the ranch under and relying upon the representations made by appellants, in respect to the water supply and land included in the transfer. In these matters fraudulent representations were made to her by appellants, and the court was fully justified in placing the parties in practically the same situation in which they found themselves prior to the execution of the contract.

The conclusions of the trial court being based upon substantial evidence and in accordance with well-recognized principles of equity, the judgment is affirmed.

Plummer, J., and Hart, Acting P. J., concurred.