[L. A. No. 15408. In Bank.—February 26, 1936.]

FRANK H. FORBIS et al., Respondents, v. RALPH R. HOLZMAN, Appellant.

Gibson, Dunn & Crutcher and Philip C. Sterry for Appellant.

Simpson & Simpson and Troy Pace for Respondents.

THE COURT.—This is an action for wrongful death by the surviving husband and daughter of Beulah Forbis, deceased. The jury brought in a verdict for plaintiffs and defendant appealed.

Mrs. Forbis engaged defendant, a physician and surgeon, as anaesthetist during an operation for the removal of the appendix and drainage of the gall bladder. She died while on the operating table. Plaintiffs contend that she died of asphyxiation as a result of defendant's negligence. Defendants contend that she died of heart failure.

The evidence shows that after Mrs. Forbis was anaesthetized, the operation was performed and the operating sur-

geon was closing the incision when he requested deeper anaesthesia. The anaesthetic used in this case was ethylene gas, carbon dioxide gas, ether and oxygen. Defendant, at the time of the request by the operating surgeon, noticed that the oxygen in the tank was being depleted. He ordered a fresh supply, which the hospital orderly brought. It took about five minutes to connect up the new tank, and when this had been completed, Mrs. Forbis was dead.

Mary Hotaling, a visitor in the spectator's gallery above the operating table, testified for plaintiff that she heard defendant say, ''The oxygen is gone, bring in a fresh tank, and make it snappy.'' Edith Tudor, the attending nurse, testified to the same effect. The nurse further testified: ''At the time I heard the statement with reference to the need for more oxygen I observed that the anaesthetic mask was being held on the patient's face by Dr. Holzman. It was removed after the patient stopped breathing. During the time intervening it was held on the face of the patient by Dr. Holzman.'' Mary Hotaling also testified that during the five-minute period in which the tanks were changed, the mask was held on the patient's face, and lifted only for an instant. Defendant testified that he did not close the valve on the ethylene tank when he called for more oxygen. The nurse testified that when the new tank was brought in she observed that the patient's skin was blue (indicating cyanosis resulting from insufficient oxygen in the blood stream). Dr. Trenery, an osteopathic physician called by plaintiff, and duly qualified as a medical expert experienced in the use of anaesthetics, testified in answer to an hypothetical question, to the effect that the deceased died of asphyxiation resulting from the administering of ethylene gas without oxygen. The medical testimony was all in agreement on the fact that the breathing of such gas without oxygen for a few minutes would probably be fatal.

Defendant testified on his own behalf that he did not hold the mask tightly over the patient's face, but kept his finger under it, raising it slightly, so that she could breathe, during the period of the change of the oxygen tanks. A number of medical experts testified for defendant that the patient's symptoms, particularly a drop in blood pressure prior to cessation

of respiration, indicated death of heart failure, and that the symptoms of asphyxiation were not present.

Undoubtedly the evidence was in conflict, and though the weight of expert medical opinion produced by defendant was greater than that brought in by plaintiffs, there was direct evidence offered by plaintiffs which supported their theory of death, and such evidence was sufficient to go to the jury, with the result that their verdict is binding in the absence of serious error in law.

Defendant urges that such error occurred in the hypothetical question asked Dr. Trenery, plaintiffs' expert witness, the contention being that the question asked was not based upon the facts developed by the testimony, and that therefore the opinion given in answer was worthless as evidence and highly prejudicial. The chief fault found with the question was that it assumed that there was nothing unusual in the blood pressure of the patient during the anaesthesia. Defendant's evidence pointed to such a drop in blood pressure before cessation of respiration, and it is contended that the omission of this fact from the hypothetical question made the answer one which was not truly applicable to the case of the deceased. But it is apparent that the actual symptoms of the patient were in dispute, defendant's expert witnesses assuming that the mask was held away from the patient's face so that she received sufficient oxygen, and plaintiffs' witness assuming the contrary. The alleged fact of a drop in blood pressure before respiration ceased, brought out by defendant's witnesses, is only one symptom, and the conclusion derived from it is in conflict with that derived from other evidence produced by plaintiffs. It may be noted also that the last blood pressure reading showed a normal result, and that the exact time of cessation of respiration was not observed. Hence it was possible that the drop in blood pressure testified to by defendant's witnesses did not precede the cessation of respiration. It was for the jury to determine the truth or falsity of these purported facts; and an opinion of an expert does not become valueless by reason of omission from the question of some disputed facts. ''The question may be framed upon any theory of the questioning party which can be deduced from the evidence, and the statement may assume any facts, within the limits of the evidence,

upon which the opinion of the expert is desired. It may omit any facts not deemed by the questioner material to the inquiry." (*Treadwell* v. *Nickel*, 194 Cal. 243 [228 Pac. 25].)

On cross-examination of Dr. Trenery defendant brought out the conflicting evidence, and the jury were fully informed. Under these circumstances we cannot say that prejudicial error has been shown.

Defendant also complains of the failure to give a number of requested instructions. Every one of the proposed instructions which was correct and relevant was already covered by other instructions given by the court, and no error appears in this connection.

The judgment is affirmed.

Rehearing denied.